**430**

Gilda TESSER, Plaintiff,

v.

BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK; Board Of Education of Community School District No. 21 of the City School District of The City of New York; Sheldon Plotnick, individually and as President of the Board of Education of Community School District No. 21, Donald Weber, individually and as Superintendent of Community School District No. 21; and Michael Miller, individually and as Principal of Public School 128, Defendants.

No. 97–CV–6719(NGG).

United States District Court, E.D. New York.

March 7, 2002.

Jeffrey M. Schlossberg, Douglas J. Good, Ruskin, Moscou, Evans & Faltischek, PC, Uniondale, NY, for Plaintiff.

Donald C. Sullivan, Corporation Counsel of the City of New York, Brooklyn, NY, Vivian Yuan, City of New York Corporation Counsel, New York City, Defendants.

Barbara A. Jaccoma, Ball Livingston, LLP, Brooklyn, NY, for Michael Miller.

## MEMORANDUM AND ORDER

GARAUFIS, District Judge.

Now before this court is Plaintiff's post-trial motion for judgment as a matter of law pursuant to FED R. CIV. P. 50, or alternatively, a new trial pursuant to FED R. CIV. P. 59. For the reasons discussed below, Plaintiff's motion is denied.

## I. Background

### 1. Procedural History

Plaintiff Gilda Tesser brought this civil rights action against her former employers ("defendants") by complaint filed November 17, 1997. The complaint included various claims, including religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § § 2000e *et seq.* ("Title VII") and the New York City Human Rights Law, Administrative Code §§ 8–101 *et seq.*, and retaliation in her terms of employment for having complained about the perceived discrimination. After years of pre-trial discovery and motion practice, the case went to trial before a jury on July 9, 2001. The trial lasted over two weeks, ending on July 25, 2001, when the jury entered a verdict for defendants on all counts.[1] The instant motion for a judgment notwithstanding the verdict pursuant to FED R. CIV. P. 50, or in the alternative, a new trial pursuant to Rule 59 followed.

### 2. The Trial and Verdict

The facts of this case are quite extensive. Many of the facts presented at trial were already developed during pre-trial litigation and discussed in my Memorandum and Order dated January 22, 2001 denying in part and granting in part defendants' motion for summary judgment. Familiarity with that decision is presumed. The following is an abbreviated review of

---

**1.** The jury verdict found 1) that plaintiff did not prove that the Board of Education, Community School District 21, Donald Weber or Michael Miller ("defendants") had discriminated against plaintiff on the basis of her religion; 2) that plaintiff did not prove that the defendants retaliated against plaintiff because of her complaints of religious discrimination or because she hired an attorney; and

3) that plaintiff did not prove that information contained in the letter dated November 29, 1994 was false or misleading. (Tr. 1375–76.) Plaintiff moved pursuant to Rules 50 and 59 only with respect to the verdicts on discrimination and retaliation. Therefore, the verdict regarding false or misleading information is not challenged or considered in this memorandum and order.

those facts as they are relevant to the instant motion and as they were further developed at trial.

At the time of the allegedly discriminatory actions, Plaintiff was an Assistant Principal in Charge of P.S. 177 in Community School District 21. Defendant Superintendent Weber appointed Plaintiff to this position. At the time, he believed Plaintiff would eventually be promoted to principal when the position became available and intended to support her candidacy for this position. (Tr. 524–25.)

In 1991, Plaintiff applied for the position of principal at P.S. 177. "In effect at that time was an internal Chancellor's C–30 Regulation requiring community school boards to follow a three-step process in selecting supervisory personnel. Level I involved the establishment of a screening committee consisting of six to ten parents, two teachers, the superintendent, and community school board members. The committee determined the selection criteria and interviewed at least ten candidates. Only the parents and teachers were allowed to vote for at least five of those candidates, who were then recommended to the community superintendent. Level II required the superintendent to evaluate the recommended candidates and recommend two to the community school board. Level III required the community school board either to select one for appointment or to request that the superintendent or committee consider other candidates from the original Level I pool." (Order of January 22, 2001 at 2–3; see also Tr. 330–331.)

Plaintiff testified that prior to, and during her candidacy, she learned that the parents of P.S. 177 were opposed to her appointment because she was Jewish. (Tr. 259–60.) Plaintiff informed Weber of the anti-Semitic animus she believed was being expressed by the parents. Plaintiff and Weber had several conversations regarding Plaintiff's concerns. Weber testified that over the course of these conversations he began to believe Plaintiff was acting irrationally, that she would be unable to work effectively with the school community, and that her perception of anti-Semitism was unfounded. In explaining why he thought Plaintiff was "unraveling" or acting "irrationally," he testified that Ms. Tesser yelled at him, that he thought she was accusing the parents of anti-Semitism rather than admitting that they simply did not like her, and that she stated she was "going to get" the parents on the selection committee. (Tr. 554–55, 619–622, 709.)

Despite the alleged religious discrimination directed at Plaintiff, the parents did not eliminate Plaintiff from consideration and she successfully moved on to the second level of consideration. Moreover, Plaintiff's own witness, a member of the Level I selection committee, testified that no parent indicated a desire to prevent Ms. Tesser's selection because she was Jewish. Plaintiff's witness did testify, however, that the parents thought Ms. Tesser was being given preferential treatment by Weber because she was Jewish. (Tr. 1275–77.) This witness further testified that the parents indicated their preference for another candidate, Mr. Ianniello. The witness thought it was unfair that the parents were attempting to hamper Ms. Tesser's progress to Level II because they did not like Ms. Tesser personally and because they preferred Mr. Ianniello for his popularity rather than for his qualifications. (Tr. 1288–90.)

After passing Level I, Plaintiff hired an attorney because of her concern about religious discrimination affecting the progress of her candidacy. On January 16, 1992, Plaintiff tape recorded a conversation she

had with Weber and Plotnick[2] in which her decision to hire an attorney was discussed. (Ex. 399.) Weber made it known to Tesser that he did not agree with her decision to hire an attorney. (*Id.*) He was later admonished for these statements in a letter from the Chancellor. (Ex. 33.) On June 24, 1992, Weber submitted his two choices for principal of P.S. 177 to the school board. Plaintiff was not one of the two finalists. (Ex. 113.) Therefore, after the completion of Level II, Plaintiff was no longer under consideration for the position of principal. Weber testified that although he did not think it was necessary for Plaintiff to hire an attorney, this was not the basis for his decision not to recommend her to Level III. (Tr. 641.) He further testified that he knew that one finalist, Kathleen Lavin, was not Jewish; however he believed the other finalist, Arlynn Brody, was Jewish. (Tr. 657–58.) In sum, Weber testified that his decision not to recommend Plaintiff was not based on her religion or in retaliation for hiring an attorney, but was the result of his concern that she could not handle the responsibilities of a principal at P.S. 177.

By letter dated June 30, 1992, Weber informed Plaintiff that instead of remaining at P.S. 177 she had been reassigned to P.S. 128, another school within District 21 in which she had worked prior to coming to P.S. 177. (Tr. 664–65.) Her assignment was to begin in August 1992. On July 7, 1992, she filed a complaint with the Board of Education of the City of New York ("BOE") alleging discrimination based on her religion in the C–30 selection process. Thus, at the time Plaintiff was beginning her work at P.S. 128, an investigation was ongoing with respect to her complaint and the selection of Lavin as principal at P.S. 177. (Tr. 703–04.) The Office of Equal Opportunity concluded that the decision not to select Plaintiff was not the result of religious discrimination, and the selection of Lavin was finalized. (Ex. 17; Tr. 704.)

During the 1992 school year at P.S. 128, various employment-related actions were taken with respect to Plaintiff, which she alleged were discriminatory. These included a change in office space, change in duties, and a refusal by Principal Miller to allow her to see and revise the faculty notes for the upcoming school year. (Tr. 155–158, 1005–1033.) Plaintiff also testified that within her first few weeks back at P.S. 128, Miller told her that she would not be allowed to remain there and threatened to have her thrown out of the building if she did not leave. (Tr. 159–60.) Plaintiff claimed to have suffered tremendous emotional stress as a result of this incident, and she was admitted to psychiatric care for treatment. She filed a "line of duty" injury claim, alleging that Mr. Miller's treatment had directly led to her need for therapy and inability to work for some 25 days. (Tr. 164–68.)

Plaintiff subsequently filed a claim of religious discrimination and retaliation with the New York Human Rights Commission in June 1993 (Ex. 322), requested a temporary transfer to another district in August of 1993 (Ex. 350), and applied for, and was granted whistle-blower status on September 21, 1993 by the Special Commissioner of Investigation ("SCOI"). (Ex. 390.) Because the BOE had not granted Plaintiff her requested transfer outside of District 21 (Tr. 719–20; Exs. 350–52), on her own initiative she obtained employment in the Plainview Old Bethpage Central School District ("Plainview"). BOE granted her a one year leave to take this position. (Tr. 186–87, 194–95.) She also was granted a leave of absence for childcare immediately following her one-year leave to work in Plainview. (Tr. 196.)

---

**2.** Sheldon Plotnick was the President of Community School Board 21 ("school board").

When it was discovered that she had been working elsewhere while on child-care leave, in violation of the leave policy, she was ordered to return to work in District 21 or risk being reported as an unauthorized absentee. (Tr. 199–200, 948–51.) When Plaintiff did not return to District 21 for work, she was deemed resigned, a less severe status than unauthorized absentee because it allowed her the option of withdrawing her resignation. (Tr. 950–52.)

At trial, the above facts, as well as those going to damages, were developed in greater detail through the submission of numerous documents, letters, tape recordings, expert opinion, witness testimony, and records from the administrative investigations and proceedings. Included among the testifying witnesses were Plaintiff, Defendant Weber, and Defendant Miller. As in many discrimination cases, ultimately the case turned in significant degree on the respective credibility of Plaintiff and defendants and their explanations for the various events and employment actions. In this case, the jury did not believe that Plaintiff's version was more probable than not, and it returned a verdict in favor of the defendants. The jury unanimously found that Plaintiff did not prove that the BOE, Community School District 21, Donald Weber, or Michael Miller "discriminated against her based on her religion," (Tr. 1375), and it found that Plaintiff had not proven that the BOE, Community School District 21, Donald Weber, or Michael Miller "retaliated against her because of her complaining of religious discrimination or because she hired an attorney." (Tr. 1376.)

## II. DISCUSSION

### A. Rule 50 Motion for Judgment as a Matter of Law

#### 1. Legal Standard

■ In this Circuit, a party seeking to vacate a jury verdict and enter judgment as a matter of law carries a "heavy burden." *See Burke v. Spartanics Ltd.*, 252 F.3d 131, 136 (2d Cir.2001); *Ryduchowski v. Port Authority of New York and New Jersey*, 203 F.3d 135, 142 (2d Cir.2000) (holding district court erred in setting aside jury verdict and entering judgment as a matter of law). Judgment as a matter of law is only appropriate when "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it." *Burke* 252 F.3d at 136 (quoting *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir.1998)); *see also* FED R. CIV. P. 50(a)(1). When considering a Rule 50 motion and deciding whether there was a sufficient evidentiary basis to support the verdict, the court cannot assess the weight of conflicting evidence or substitute its judgment for that of the jury. Rather, it must make all credibility determinations and draw all inferences in favor of the nonmovant. *See Sharkey v. Lasmo*, 214 F.3d 371, 374 (2d Cir.2000); *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 367 (2d Cir.1988); *Mattivi v. South African Marine Corp.*, 618 F.2d 163, 167–68 (2d Cir.1980).

#### 2. Analysis

##### a) Plaintiff Carries the Burden of Persuasion

■ First, Plaintiff argues for judgment as a matter of law on the basis that there is overwhelming circumstantial evidence to support her claim of religious discrimination by her employers and defendants have failed to supply evidence sufficient to

support their asserted legitimate business reason for not promoting Plaintiff. (Mem. of Law in Supp. of Pl.'s Mot. Pursuant to Rules 50 and 59 ("Pl.'s Mem. of Law") at 13–14.) In making this argument, Plaintiff implies that by having established her *prima facie* case, she presented the jury with a presumption of discrimination that shifted the burden of disproving such discrimination to defendants. To the extent Plaintiff relies on this presumption, it mischaracterizes the proper legal burden Plaintiff maintained at trial, and is insufficient for granting judgment as a matter of law.

■■■ The Second Circuit has made clear that in employment discrimination cases, as in other civil cases, the ultimate burden of persuasion *always* remains with the plaintiff. *See Fisher v. Vassar College,* 114 F.3d 1332, 1336–37 (2d Cir.1997). The presumption created by the *McDonnell Douglas* burden shifting analysis, so critical in surviving summary judgment or dismissal at the close of plaintiff's case[3], is not enough to guarantee a plaintiff will win her case, "even if the elements of the prima facie case go unchallenged." *Id.* at 1336. "[E]vidence sufficient to satisfy the scaled-down requirements of the prima facie case under *McDonnell Douglas* does not necessarily tell much about whether discrimination played a role in the employment decision. The fact that a plaintiff is

judged to have satisfied these minimal requirements is no indication that, at the end of the case, plaintiff will have enough evidence of discrimination to support a verdict in his favor." *Id.* at 1337; *see also Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 116 (2d Cir.2000) ("Generally, it is the judge, not the jury, who must decide whether a plaintiff has satisfied the requirements of *McDonnell Douglas's* minimal version of a *prima facie* case; when a [discrimination] case does go to the jury, the jury's task is simply to determine the ultimate question of whether the plaintiff met her burden of proving that the defendant was motivated by prohibited retaliation.") (internal quotations, alterations and citations omitted).

In the instant case, the facts presented by Plaintiff were sufficient to establish a *prima facie* case at the summary judgment stage and to proceed to trial. Those same facts, however, are not necessarily sufficient, as a matter of law, to require a verdict in her favor. Thus, in considering Plaintiff's motion for judgment notwithstanding the verdict, this court does not reapply the *McDonnell Douglas* analysis to Plaintiff's claims. Rather, this court considers the sole determinative issue, whether or not a reasonable jury could have concluded that Plaintiff failed to prove by a preponderance of the evidence that defendants' employment-related ac-

---

**3.** On a summary judgment motion in a Title VII case "where there is no direct or overt evidence of discriminatory conduct, [courts] apply the three-part burden shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir.2000). First, the plaintiff must establish her *prima facie* case of discrimination by showing that 1) she is a member of a protected class; 2) she was qualified for the position; 3) she was subject to an adverse employment action; and 4) circumstances give rise to the inference that

the adverse action was motivated by impermissible discrimination. *See id.* Once the *prima facie* case is established, a rebuttable presumption of discrimination arises, and the defendant has the burden of producing evidence of a legitimate nondiscriminatory reason for the employment action. *See Weinstock,* 224 F.3d at 41. If the defendant carries this burden, then the presumption disappears and in order to defeat summary judgment the plaintiff must present evidence sufficient to allow a rational finding that a discriminatory motive was the real reason for the adverse employment action. *Id.*

tions were motivated by illegal discrimination or retaliation.

### b) Plaintiff's Claim of Religious Discrimination

■ In arguing that Plaintiff has proven as a matter of law the defendants' discriminatory motive, Plaintiff essentially reargues the facts presented at trial. Based on these facts she asserts that "the evidence supports but one conclusion: Weber capitulated to the discriminatory will of the parents and declined to pass Ms. Tesser's name on to Level III." (Pl.'s Mem. of Law at 15.) She argues that Weber's proffered reasons for not passing on Ms. Tesser's name are incredible, and therefore the only rational conclusion is that he is trying to hide his discriminatory motives. In particular, Plaintiff points to the fact that Weber continued to employ and approve of Ms. Tesser's work during the same period of time he claims that she began acting irrationally and incapable of taking on the position of principal. (*Id.* at 16–17.)

■ As a matter of law, Plaintiff's suggestion that a clear showing of pretext establishes discrimination in this case is wrong. While proof of pretext combined with circumstantial evidence may be sufficient to prove discriminatory intent, it does not require such a finding. *See Zimmermann v. Associates First Capital,* 251 F.3d 376, 381–82 (2d Cir.2001) (holding combination of *prima facie* case and evidence of pretext is neither always sufficient nor always insufficient). In other words, the jury might have disbelieved Weber's proffered reason for his decision, yet still not believed that Plaintiff had proven illegal discrimination was a motivating factor. *See Fisher,* 114 F.3d at 1339–40 ("That the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of [dis-

crimination] is correct.") (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)); *Schnabel v. Abramson,* 232 F.3d 83, 90 (2d Cir.2000).

As a factual matter, defendants presented sufficient evidence upon which a jury could believe their proffered reasons were true, or at least have concluded that discrimination was not a motivating factor. In explaining his reasoning in not recommending Plaintiff, Weber testified that while he thought Ms. Tesser was still capably performing her current duties, he did not believe that she was demonstrating the skills, especially in relating to the parents and community, necessary for a principal. Based on this assessment, he decided not to pass her name on to Level III. (Tr. 764–69.) The evidence presented at trial is not wholly inconsistent with this explanation.

On a motion for judgment as a matter of law, I cannot disregard Weber's explanation by passing on his credibility or weighing conflicting evidence. *See United States v. Landau,* 155 F.3d 93, 103 (2d Cir.1998); *Smith,* 861 F.2d at 367. While evidence introduced by Plaintiff could have led a reasonable jury to disbelieve Weber, the evidence was not so "overwhelming[ly] ... in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against [her]." *Burke* 252 F.3d at 136. Further, given the significant conflicting evidence, I do not find that the jury's verdict was based on "sheer surmise and conjecture." *Id.* Accordingly, I find that a reasonable jury could conclude, as did the jury in this case, that Plaintiff failed to prove by a preponderance of the evidence that defendants acted with a discriminatory motive.

### c) Plaintiff's Claim of Retaliation

■ Plaintiff also argues that she has proven retaliation by defendants as a mat-

ter of law. With respect to Defendant Miller, Plaintiff argues that this court should find his testimony that he did not have knowledge of her participation in a protected activity as "incredible as a matter of law" and that this court should "infer" that Miller had knowledge because the SCOI determined that Miller had retaliated against Plaintiff. (Pl.'s Mem. of Law at 20–21.)

With respect to Defendant BOE, Plaintiff argues that because the SCOI determined that Miller retaliated against Plaintiff, this finding is "conclusive" and when the BOE accepted this determination it "admitted" retaliation by Miller, for which it is liable. (*Id.* at 27.) Similarly, she argues that the BOE already "admitted" Weber's retaliatory conduct when it found that Weber acted improperly in calling the Plainview school in violation of BOE's order that Weber not call any of Plaintiff's "prospective employers". (*Id.* at 28.)

■■■ State administrative findings, such as the SCOI investigation, or the finding of probable cause by the New York Human Rights Commission are not preclusive on federal Title VII claims. *See Univ. of Tenn. v. Elliott,* 478 U.S. 788, 796, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); *Raniola v. Bratton,* 243 F.3d 610, 623–24 (2d Cir. 2001). Therefore, the jury was not bound to find, as Plaintiff would have it, that the SCOI findings or their adoption by the BOE establish retaliatory conduct as a matter of law under the meaning of Title VII. Moreover, the jury was properly instructed on the various elements required for a finding of retaliation, and how those differed as between individual and corporate defendants. The jury was instructed that "[t]o find a defendant liable for retaliation, you must find, by a preponderance of the evidence, that the defendant, motivated by the plaintiff's reasonable and good-faith opposition to discrimination

based on her religion, subjected her to an adverse employment action." (Tr. 1357–58.); *see also Raniola,* 243 F.3d at 623. I further instructed the jurors that they could find retaliation by the BOE, Community School District 21 and Weber "even if Miller denies direct knowledge of the plaintiff's claims of religious discrimination" (Tr. 1356), and the jury received instructions on the meaning of constructive discharge as a form of adverse employment action. (Tr. 1359.)

While the SCOI finding was not binding on the jury, it was persuasive evidence in favor of Plaintiff. This court, however, must view the evidence in the light most favorable to defendants and draw all reasonable inferences in their favor. Considering the SCOI was only one piece of evidence among many, I find that a reasonable jury could conclude that the actions taken by the defendants were not retaliatory.

First, Miller testified that when Plaintiff returned to P.S. 128 he did not know of her complaints to the Chancellor and the BOE. (Tr. 884.) I will not second-guess the jury's weighing of his testimony. Second, the defendants presented evidence upon which a reasonable jury could conclude that the various employment-related actions were not "adverse," regardless of defendants' knowledge of Plaintiff's complaints. For instance, although Plaintiff's office at P.S. 128 upon her return there in 1992 was not the same one she had during her prior tenure, Miller testified that the change had occurred after she left in 1990, when a new assistant principal, Mr. Sealey, took over. (Tr. 1004–05.) Based on this evidence, the jury could reasonably conclude that the change in office space, which occurred two years prior, was not an adverse employment action directed at Plaintiff's complaints of religious discrimination. Similarly, the jury could reasonably con-

clude that the fact that Plaintiff was responsible for more bus and lunchroom duties was not retaliatory since these were the same bus and lunchroom duties that Mr. Sealey had performed as assistant principal prior to Plaintiff's return to this position. (Tr. 1013–16.) Finally, accepting as true Defendant Miller's account of the incident in which he told Plaintiff to leave the building, he was ordering her to go to the district office for a counseling session because of her recent comments about getting back at the superintendent, the school board and the parents. (Tr. 903.) A reasonable jury could find Miller's action appropriate in the given context and conclude that he did not retaliate for any complaints of discrimination by Plaintiff.

While the examples discussed above do not account for every point of fact which Plaintiff raises to support her motion for judgment as a matter of law on the retaliation claim, they amply demonstrate the sufficient conflicting evidence as to the motivations of the defendants. Thus, I find that a reasonable jury could conclude that Plaintiff failed to prove by a preponderance of the evidence that the defendants retaliated against Plaintiff because of her complaints of discrimination.

## B. Plaintiff's Rule 59 Motion for a New Trial

### 1. Legal Standard

A motion for a new trial, pursuant to FED R. CIV. P. 59, may be granted when the district court is "convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir. 1988). Unlike the standard for granting judgment as a matter of law, the standard for a new trial permits the trial judge to "weigh the evidence himself, and [he] need not view it in the light most favorable to

the verdict winner." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir.1998). Despite this more lenient standard, the Second Circuit has cautioned that a trial court "should rarely disturb a jury's evaluation of a witness's credibility." *Id.* (internal citations omitted). Therefore, "[w]here the resolution of the issues depend[s] on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir.1992); *see also DLC Mgmt. Corp.*, 163 F.3d at 134; *Piesco v. Koch*, 12 F.3d 332, 345 (2d Cir.1993).

### 2. Analysis

First, Plaintiff argues that the complete lack of credibility of defendants Miller and Weber taken together with the substantial evidence in her favor warrant a new trial. In addition, she identifies four other grounds for granting a new trial: the inadequacy of jury deliberations, the limitations on Plaintiff's ability to present her rebuttal case, the admission of irrelevant and prejudicial evidence, and improper statements made by defendants' counsel during summation. (Pl.'s Mem. of Law at 31–32.) Even under the more lenient standard for granting a new trial, this court finds that none of the stated grounds are sufficient, individually or cumulatively, for granting a new trial in this case.

### a) Sufficiency of the Evidence

As already discussed with respect to the Rule 50 motion, there is a significant amount of evidence that if believed as true supports the jury's verdict for defendants. I do not find that defendants Miller and Weber were so lacking in credibility as witnesses that the jury could not have properly believed all, or part, of their testimony. Therefore, I decline to set aside a

jury verdict on the basis of witness credibility when the resolution of determinative issues in this case largely depended on the juror's assessment of those very witnesses' testimony. *See Metromedia Co.*, 983 F.2d at 363.

### b) Adequacy of Jury Deliberations

■ Second, Plaintiff's claim that the jury deliberations were inadequate is without merit. In *Wilburn v. Eastman Kodak Co.*, 180 F.3d 475 (2d Cir.1999), the Second Circuit held that the trial judge did not err in denying plaintiff's motion for a new trial where the jury had deliberated for only twenty minutes. *Id.* The court held, "[a] jury is not required to deliberate for any set length of time. Brief deliberation, by itself, does not show that the jury failed to give full, conscientious or impartial consideration to the evidence." *Id.* In the instant case, the jury was given comprehensive instructions on the law and then deliberated for approximately two hours. While there was a great deal of documentary evidence to consider, the issues to be resolved in this case were not more complex than the average Title VII employment discrimination case. Moreover, there is no reason to conclude that in considering this case the jury "contemptuously or flippantly disregarded its duty." *Id.* Accordingly, I find no basis for overturning the jury verdict based on the length of its deliberations.

### c) Trial Errors

Plaintiff's third through fifth asserted grounds for a new trial all allege some type of evidentiary or trial error. This court considers these grounds for a new trial in the context of the harmless error standard of the Federal Rules of Civil Procedure, which states:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial ... unless refusal to take such action appears to the court inconsistent with the substantial justice. The court at every stage of the proceeding must disregard any error of defect in the proceeding which does not affect the substantial rights of the parties.

Fed.R.Civ.P. 61; *see also Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150 (2d Cir.1997) (holding that the court "will not conclude that a substantial right was affected unless it is likely that in some material respect the factfinder's judgment was 'swayed by the error' ").

### i. Order of Witnesses

■ Plaintiff's third ground for a new trial is that she suffered substantial prejudice when she took the stand before defendants Weber and Miller, limiting her ability to rebut their testimony. Weber and Miller were called to the stand as Plaintiff's witnesses, but were not called to the stand by Defense. Plaintiff intended to take the stand as part of her case in chief, but only after first placing Weber and Miller on the stand for direct. Despite this court's order, Weber and Miller were not available on the first day of trial, thus Plaintiff took the stand first. Plaintiff argues that this so severely limited her ability to rebut statements made by Weber and Miller that it amounts to grounds for a new trial.

A trial court has discretion to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time...." Fed.R.Evid. 611. Therefore, it was within this court's discretion to move forward

once the jury had been selected, rather than delaying the start of trial by a day or more so that Plaintiff would not have to take the stand before Weber and Miller. Moreover, Plaintiff was free to request an opportunity to retake the stand after Weber and Miller testified but before the close of her case-in-chief. She made no such request at trial. Accordingly, I find that the order of presenting evidence and witnesses was managed in accordance with Rule 611 and that Plaintiff had adequate opportunity at the time of trial to remedy any potential prejudice that she believed would result from the order of witnesses.

### ii. Improperly Admitted Evidence

■ Plaintiff's fourth ground for a new trial is based on the admission of two exhibits, her unredacted tax returns and a letter written by the interim Superintendent of the Plainview school, which explained why Plainview was denying Plaintiff tenure. Plaintiff argues that both of these pieces of evidence were irrelevant and unduly prejudicial and that their admission warrants a new trial.

■ As to the unredacted tax returns, Plaintiff principally argues that the "Jury's access to the entire tax returns only served to tap any latent prejudices the jurors might direct to Ms. Tesser based upon her wealth." (Pl.'s Mem. of Law at 36.) I previously considered the issue of relevance and prejudice before deciding to admit the tax returns in dispute. (Tr. 1467–69.) The decision as to whether or not to admit these documents was reserved until after Plaintiff elicited testimony from her expert, Mr. McAteer, on the tax implications of a damages award to Plaintiff. Mr. McAteer testified that he had reviewed Plaintiff's W–2 forms, among other documents, in preparing his report and he testified as to how a lump sum award to Plaintiff would increase her tax

bracket and cause her to pay more in taxes than if she had received that sum as pay over several years. (Tr. 1492–93.) Based on this testimony, it was decided to admit the tax forms with the following limiting instructions to the jury: "The amounts earned by plaintiff's spouse and the family's other income and assets as reflected on the joint tax returns may be considered by you only to the extent that you believe they bear on the testimony of Mr. McAteer to the degree that he referred to the tax consequences in calculating damages. These amounts have no other bearing on this case, and I instruct you not to consider them otherwise." (Tr. 1363.) In light of this limiting instruction, and the rule that "juries are presumed to follow their instructions," *Zafiro v. United States*, 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), I conclude that any potential prejudice was sufficiently cured and the admission of the tax returns did not create substantial prejudice.

■ With respect to the admission of Defendants' Exhibit NN–2, which was the letter by the interim Superintendent of Plainview, Plaintiff withdrew her objections to admission of this exhibit. (Tr. 431–439, 464–65.) Moreover, this letter was discussed in, and attached to, Plaintiff's Expert Witness Report, which was admitted by Plaintiff as Exhibit 309. (Tr. 1346, Ex. 309 at 7.) Given these facts, Plaintiff cannot claim any prejudice based on its admission, let alone claim substantial prejudice requiring a new trial.

### iii. Defendants' Summation

■ Finally, Plaintiff argues that defense counsel made statements in summation which "led the jury over the line from permissible inference to impermissible speculation." (Pl.'s Mem. of Law at 38.) Specifically, Plaintiff argues that defendants caused her substantial prejudice by

suggesting, without any factual support, that Plaintiff was withholding, or had destroyed, various pieces of evidence or witness testimony that would either fail to support her claim or, alternatively, exonerate Defendants. (*Id.* at 39–46.) For instance, Plaintiff objects to statements made in reference to the tape recorded phone conversations, such as "What did she cutout? She cut something out. She is hiding something from you, snippants she is one to give you little snippants, not the full picture, if you saw the full picture you would realize there was not merit to her claim at all." (Tr. at 1250.)

In a civil case such as this, speculation by defense counsel, while not proper, does not threaten to impermissibly shift the burden of proof as it would in a criminal case in which the prosecution makes unfounded speculative arguments about a defendant's guilt. Here, defendants were free to argue that Plaintiff had not met her burden and to question the sufficiency of her evidence. While, there was no specific evidentiary basis for suggesting that Plaintiff had "cutout" or withheld other tape-recordings, taken in context the defense was arguing that the recordings presented by Plaintiff did not accurately represent the conversations between her and defendants. Similarly taking in context each of the statements to which Plaintiff points, I do not believe that they were so prejudicial as to have improperly swayed the jury. Moreover, I gave the jury very specific instructions to preclude any impermissible speculation. The jury was instructed that, "[r]easonable inferences are conclusions prompted by reason and common sense. Not all logically possible conclusions are reasonable inferences. Whether a particular inference is reasonable is exclusively for you to determine. In deciding this case, you may consider only the exhibits which have been admitted in evidence and the testimony of the witnesses as you have heard it in this courtroom." The jury was further cautioned, that "[t]he questions, arguments, remarks and summations of the attorneys are not evidence . . . ." (Tr. 1346–48.)

I find that any potential prejudice resulting from statements by defense counsel which may have verged on speculation was adequately cured by the instructions to the jury, and in any case, in light of all the other evidence, such statements could not be considered so substantially prejudicial as to "in some material respect" have "swayed" the factfinder's judgment. *Perry*, 115 F.3d at 150.

### d) Plaintiff is Not Entitled to a New Trial

Having considered all the evidence presented at trial, and for all the reasons discussed above, I do not believe that the jury reached a "seriously erroneous result" in deciding that Plaintiff had not carried her burden of proof and I do not find that the verdict is a "miscarriage of justice." Accordingly, Plaintiff's motion for a new trial is denied.

### III. Conclusion

For all the reasons discussed above it is hereby ORDERED that Plaintiff's motion for judgment as a matter of law or, in the alternative, for a new trial is DENIED in its entirety.

SO ORDERED.