Gilda TESSER, Plaintiff–Appellant,

v.

BOARD OF EDUCATION OF the CITY SCHOOL DISTRICT OF the CITY OF NEW YORK, Board of Education of the Community School District No. 21 of the City School District of the City of New York, Sheldon Plotnick, individually and as President of the Board of Education of Community School District No. 21, Donald Weber, individually and as Superintendent of Community School District No. 21, and Michael Miller, individually and as Principal of Public School 128, Defendants–Appellees.

No. 02–7552.

United States Court of Appeals, Second Circuit.

Argued: April 23, 2003.
Decided: May 27, 2004.

Joseph P. Tucker, Kurzman, Karelsen &
Frank, LLP, New York, NY, for Plaintiff–
Appellant.

Michael A. Cardozo, Corporation Coun-
sel of the City of New York, New York,
NY, for Defendants–Appellees.

Before: CALABRESI, F.I. PARKER,* and SACK, Circuit Judges.

SACK, Circuit Judge.

The plaintiff-appellant, Gilda Tesser, brought this action in the United States District Court for the Eastern District of New York against the Board of Education of the City School District of the City of New York (the "Board"), the Board of Education of the Community School District No. 21 of the City School District of the City of New York, and several related individual defendants. She alleges religious discrimination, and retaliation against her for her efforts to address the perceived discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York City Human Rights Law, New York City Administrative Code § 8–101 *et seq.* On July 25, 2001, a jury rendered a verdict for the defendants on all of Tesser's claims. Two days later, the district court (Nicholas G. Garaufis, *Judge*) entered judgment on that verdict. Tesser then moved for judgment as a matter of law or, in the alternative, for a new trial.

On March 7, 2002, the district court denied Tesser's motion. *Tesser v. Bd. of Educ.*, 190 F.Supp.2d 430, 443 (E.D.N.Y. 2002). Tesser appeals the judgment and the denial of her motion for a new trial, arguing that the district court erred by admitting into evidence Tesser and her husband's unredacted, jointly filed federal income tax returns and by not granting her a new trial because of the defendants' counsel's improper remarks during summation.

**BACKGROUND**

The facts underlying this appeal are set forth in some detail in the district court's memorandum and order denying Tesser's motions. *Id.* at 433–36. Because the issues on appeal relate solely to the admissibility of evidence and defendants' summation, we confine ourselves to a summary of the relevant facts.

In 1991, Tesser was employed by the Board as an assistant principal at Public School 177, in Brooklyn, New York. In September of that year, she applied to become principal of the school. Although she made some progress in the complex selection process, she was not selected for the job. She asserted during the process, as she asserts now, that she was discriminated against because she is Jewish.

After failing to receive the promotion, Tesser was reassigned from P.S. 177 to Public School 128, in the same district. Shortly thereafter, she filed a complaint with the Board alleging that she had been denied the promotion because of her religion. The Board's Office of Equal Opportunity concluded, however, that the promotion decision was not the result of religious discrimination. Tesser also asserts that after she reported for work at P.S. 128, various employment-related actions were taken against her in retaliation for her discrimination complaint.[1]

Thereafter, the Board granted Tesser a one-year leave of absence so that she could

---

\* The Honorable Fred I. Parker participated in the oral argument of this appeal but died before this opinion was prepared. The appeal is being decided by Judges Calabresi and Sack pursuant to Second Circuit Rule § 0.14.

1. Tesser testified that, in one such incident, the principal of P.S. 128 threatened to have Tesser ejected from the building if she did not leave voluntarily. Tesser contends that this confrontation caused her emotional stress and that as a result, she was admitted to psychiatric care for treatment. She filed a "line of duty" injury report, alleging that the principal's treatment had directly led to her need for therapy and her inability to work for some twenty-five days.

work as an assistant principal in a school district in Plainview, New York, and, immediately after that, one year of child-care leave. During the child-care-leave year, Tesser continued to work for the Plainview school district, in violation of the Board's leave policy. As a result, the Board ordered Tesser to return to work for the Board. Tesser refused. In November 1994, the Board deemed that refusal to be a resignation.

Tesser filed this action on November 17, 1997. At trial, counsel for the defendants moved to admit into evidence Tesser and her husband's unredacted, jointly filed federal income tax returns for the tax years 1996 through 2000, which reflect that during those reporting periods, Tesser and her husband received substantial income. Tesser objected. The district court reserved judgment on the objection.

Tesser's damages expert subsequently testified that if the jury awarded compensatory damages as a "lump-sum" payment—as compared to the annual teacher's salary payments that Tesser would have received had her employment not been terminated—then Tesser's taxable income would shift from an intermediate tax bracket into the highest bracket. The district court then admitted Tesser's tax returns into evidence on the theory that the expert's testimony "opened the door." The court instructed the jury, however, that the returns could be considered "only to the extent that [the jury] believe[d] that they [bore] on the testimony of [the expert] to the degree that he referred to the tax consequences in calculating damages." Trial Tr., July 25, 2001, at 1363. The court continued: "These amounts have no

other bearing on this case, and I instruct you not to consider them otherwise." *Id.*

During summation, the defendants' counsel speculated that Tesser had deliberately deleted the end of a conversation she had had with the principal of P.S. 177 from a tape recording that she had introduced into evidence. Counsel told the jury that "[s]he is hiding something from you[, and] if you saw the full picture you would realize there was no[ ] merit to her claim at all." Trial Tr., July 24, 2001, at 1250.[2] And in response to Tesser's testimony that she had visited two doctors—Drs. Levinson and Stanger—for psychological treatment, counsel asked the jury, "Where is Dr. Levinson? Where are his records?" and, "Why don't we have Dr. Stanger's notes? ... If not Dr. Levinson['s], at least Dr. Stanger's .... Where are his notes? ... What is being hidden from you?" *Id.* at 1276–77.

After the defendants' counsel concluded his summation, the district court invited Tesser's counsel to object to the remarks about the doctors and to suggest remedies for any prejudice to Tesser that the remarks may have caused. Tesser's counsel replied that he wished to be permitted to tell the jury, during his rebuttal, that the defendants had the ability to call the two doctors as witnesses, but did not do so. The court agreed. It then invited any other motions or objections. There being none, summations continued and Tesser's counsel made the comments for which he had sought permission.

The district court later instructed the jury:

> Reasonable inferences are conclusions prompted by reason and common sense. Not all logically possible conclusions are

**2.** Although Tesser's counsel did not object to those specific remarks, immediately before defendants' counsel made them, Tesser's counsel objected to defendants' counsel's pre-vious speculation before the jury about the abrupt end of the tape recording, arguing that it had "no foundation." The district court overruled the objection.

reasonable inferences. Whether a particular inference is reasonable is exclusively for you to determine.

In deciding this case, you may consider only the exhibits which have been admitted in evidence and the testimony of the witnesses as you have heard it in this courtroom.

Trial Tr., July 25, 2001, at 1347–48. The court also told the jury, "The questions, arguments, remarks and summations of the attorneys are not evidence." *Id.* at 1348.

After the jury returned a verdict for the defendants and the district court entered judgment thereon, Tesser moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 and, in the alternative, for a new trial pursuant to Federal Rule of Civil Procedure 59. With respect to the new trial, she argued, *inter alia*, that the district court erred by admitting the tax returns into evidence and that the remarks by the defendants' counsel quoted above unfairly influenced the jury. *See Tesser,* 190 F.Supp.2d at 436–43. The district court denied both of Tesser's motions. *Id.* at 443.

Tesser appeals from the district court's judgment and the denial of her motion for a new trial.

## DISCUSSION

### I. Appeal from the Judgment Entered on the Jury Verdict

Tesser first contends that the district court committed reversible error by admitting into evidence her and her husband's unredacted, jointly filed federal income tax returns, thereby violating the "long-standing rule of law that the admission of [the] wealth of a party, when irrelevant, is prejudicial, not harmless and mandates reversal." Appellant's Reply Br. at 1.

#### A. Error.

■ We review a district court's evidentiary rulings for abuse of discretion. *United States v. Tropeano,* 252 F.3d 653, 657 (2d Cir.2001). " 'To find such an abuse, we must be persuaded that the trial judge acted in an arbitrary and irrational fashion.' " *United States v. Dhinsa,* 243 F.3d 635, 649 (2d Cir.2001) (quoting *United States v. Pipola,* 83 F.3d 556, 566 (2d Cir.1996)).

■ "Evidence of wealth ... is generally inadmissible in trials not involving punitive damages." *Reilly v. Natwest Mkts. Group Inc.,* 181 F.3d 253, 266 (2d Cir.1999) (citing Joseph M. McLaughlin, *Weinstein's Federal Evidence* § 401.08[6] (2d ed.1998)), *cert. denied,* 528 U.S. 1119, 120 S.Ct. 940, 145 L.Ed.2d 818 (2000). Tesser cites *Laidlaw v. Sage,* 158 N.Y. 73, 52 N.E. 679 (1899), for the principle that "[e]vidence of the wealth of a party is never admissible, directly or otherwise, unless in those exceptional cases, where position or wealth is necessarily involved in determining the damages sustained." *Id.,* 158 N.Y. at 103, 52 N.E. at 690. Tesser argues that the present case is not, in that sense, "exceptional."

■ Despite this general rule of exclusion, however, evidence of wealth may "be admitted to impeach the testimony of a witness who 'open[s] the door' to the subject." *Reilly,* 181 F.3d at 266 (quoting *Textile Deliveries, Inc. v. Stagno,* 52 F.3d 46, 49 (2d Cir.1995)) (alteration in original). "Of course, to be admitted for this purpose, the wealth evidence must actually be inconsistent with the witness[ ]'s testimony." *Id.* (citing *United States v. Hale,* 422 U.S. 171, 176, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975)). The testimony of Tesser's economic expert, which indicated that payment in a lump sum as a result of a jury verdict would shift Tesser and her hus-

band's taxable income into the highest income tax bracket, may indeed have "opened the door" to the introduction of Tesser and her husband's federal income tax returns, as the district court concluded. The tax returns may have supported a conclusion that Tesser and her husband were in the highest federal income tax bracket irrespective of whether she received one or more additional payments in installments or in a lump sum. *See Tesser,* 190 F.Supp.2d at 442.

Tesser has noted, however, that "[t]here is nothing on the tax returns that indicates . . . that [she and her husband are] in the highest tax bracket," Trial Tr., July 24, 2001, at 1200, that her expert "did not review the couple's tax returns," Appellant's Br. at 27, and that his testimony was "limited . . . to the tax effect of a damages payment in a lump [sum] payment versus a payout over time," *id.* For these reasons, Tesser contends, her tax returns were not "actually . . . inconsistent" with the expert's testimony, Appellant's Br. at 28 (quoting *Reilly,* 181 F.3d at 266), and therefore did not "open the door" to the admission of the returns.

■ We need not decide this issue, however, because even if the admission of the tax returns was error, the error was harmless.

### B. Harmless Error.

■ Federal Rule of Civil Procedure 61 provides:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial

justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

An erroneous evidentiary ruling that does not affect a party's "substantial right" is thus harmless. *See also* McLaughlin, *supra,* § 103.40; Fed.R.Evid. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."). Whether an evidentiary error implicates a substantial right depends on "the likelihood that the error affected the outcome of the case." *Malek v. Fed. Ins. Co.,* 994 F.2d 49, 55 (2d Cir.1993).

■ In *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), the Supreme Court stated that "if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is ·impossible to conclude that substantial rights were not affected." *Id.* at 765, 66 S.Ct. 1239. Although *Kotteakos* was a criminal case, we have cited and applied this standard to error in civil cases. *See, e.g., Rotolo v. Digital Equip. Corp.,* 150 F.3d 223, 225 (2d Cir.1998); *Hynes v. Coughlin,* 79 F.3d 285, 291 (2d Cir.1996); *Phoenix Assocs. III v. Stone,* 60 F.3d 95, 105 (2d Cir.1995); *Malek,* 994 F.2d at 55; *Amatucci v. Del. & Hudson Ry. Co.,* 745 F.2d 180, 184 (2d Cir.1984). We have altered the standard for civil cases, however, by requiring the appellant to show that the error was not harmless, rather than requiring the appellee to show that the error was harmless. Thus, an evidentiary error in a civil case is harmless "unless [the appellant demonstrates that] it is likely that in some material respect the factfinder's judgment was swayed by the error." *Costantino v. David M. Herzog, M.D., P.C.,* 203 F.3d 164, 174 (2d Cir.2000) (quoting *Perry v.*

*Ethan Allen, Inc.*, 115 F.3d 143, 150 (2d Cir.1997)) (internal quotation marks omitted).[3]

Tesser asserts that the admission of the unredacted tax returns showing the substantial income she and her husband received during the time period in question resulted in the jury's verdict against her. But the jury was clearly and powerfully instructed that the returns were to be considered only "to the degree that [Tesser's expert] referred to the tax consequences in calculating damages," and that "[t]he[ ] amounts have no other bearing on th[e] case, and [the jury was] not to consider them otherwise." Trial Tr., July 25, 2001, at 1363. And we have observed, that, generally, "[i]t must be assumed that the jury followed instructions." *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 340 (2d Cir.1993). In view of the curative instructions, the evidence in the case, and the fact that Tesser offers nothing but conjecture to the contrary, we have no basis on which to conclude that "it is likely that in some material respect the factfinder's judgment was swayed by the [alleged] error" of admitting the tax returns. *Costantino*, 203 F.3d at 174 (citations and internal quotation marks omitted).

## II. Appeal from the Order Denying Tesser's Motion for a New Trial

We review the district court's denial of a motion for a new trial for abuse of discretion. *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 623 (2d Cir.2001). " 'A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.' " *Id.* at 623–24 (quoting *Atkins v. New York City*, 143 F.3d 100, 102 (2d Cir.1998)).

*Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 106 (2d Cir. 2002); *see also Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 540 (2d Cir.1992) ("[N]ormally the district court's determination as to whether counsel's improper conduct caused prejudice is reviewed under the traditional abuse of discretion standard.").

### A. Admissibility of Income Tax Returns.

The district court, in denying Tesser's motion for a new trial, concluded that Tesser was not substantially prejudiced by the admission into evidence of Tesser and her husband's jointly filed federal income tax returns. *Tesser*, 190 F.Supp.2d at 442–43. The court was thus plainly of the view that "the jury did not reach a seriously erroneous result and [that] the verdict was not 'a miscarriage of justice.' " *Medforms*, 290 F.3d at 109 (quoting *Hugo Boss*, 252 F.3d at 623–24). For substantially the same reasons that we concluded

---

**3.** As indicated by the cases cited for this proposition in the text above, this is the prevailing standard in this Circuit. However, because some of our decisions and their progeny are in tension with this rule, *see, e.g., Luciano v. Olsten Corp.*, 110 F.3d 210, 217 (2d Cir.1997) (stating that this Court will not grant a new trial unless it is "convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice" (citation and internal quotation marks omitted)); *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 17 (2d Cir.1996) (same), we note that this opinion was circulated before filing to all active members of the court, *see Adeleke v. United States*, 355 F.3d 144, 155 n. 9 (2d Cir.2004) ("To the extent this decision departs from our earlier decisions ... we note that this opinion was circulated before filing to all active members of the court."); *United States v. Hargrett*, 156 F.3d 447, 451 (2d Cir.1998) (similar); *United States v. Cutler*, 6 F.3d 67, 73 n. 5 (2d Cir.1993) (similar).

in our harmless error inquiry that "it is [un]likely that in some material respect the factfinder's judgment was swayed by the [alleged] error," *see* Part I.B., *supra,* we conclude that the district court did not abuse its discretion in denying the motion for a new trial based on the admission into evidence of the tax returns.

## B. The Defendants' Counsel's Remarks During Summation [4]

Tesser also argues that she is entitled to a new trial because of inflammatory statements made by defendants' counsel that, according to Tesser, suggested that she was misleading the jury by "hiding" evidence. Appellant's Br. at 31–33. We need not decide whether these remarks were improper. Sharing the district court's concern that they were unduly speculative, *see Tesser,* 190 F.Supp.2d at 443, we assume that they were.

█ We observed in *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47 (2d Cir.1998), that "[q]uite plainly, a party is entitled to a new trial when opposing counsel's conduct causes prejudice to that party ... thereby unfairly influencing its verdict." *Id.* (citing *Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin,* 283 U.S. 520, 521, 51 S.Ct. 501, 75 L.Ed. 1243 (1931), and *Pappas,* 963 F.2d at 540). We continued:

> Federal courts have recognized unfair prejudice and ordered new trials where attorneys have unfairly influenced the jury by attempting to exploit its regional bias, *see, e.g., Pappas,* 963 F.2d at 540–41 (faulting counsel for singling out plaintiff due to his out-of-state status),

or by injecting irrelevant allegations about the opposing party into the case, *see, e.g., Alejo Jimenez v. Heyliger,* 792 F.Supp. 910, 919–20 (D.P.R.1992) (setting aside verdict in a medical malpractice suit due in part to defense counsel's statement that plaintiff was a "precocious and promiscuous young woman").

*Id.* But we concluded in *Greenway* that on the facts of that case, a new trial was not required. "[A]lthough the lawyer's choice of gay-bashing to illustrate his point of the evils of discrimination—because the jury likely assumed that [the plaintiff] was a homosexual—was hardly commendable, we do not think it, given the context of the entire trial and the judge's instruction that statements made by the lawyers were not to be considered as evidence, unfairly influenced the jury's deliberations and verdict." *Id.*

The case before us is much like *Greenway.* In deciding that there was insufficient prejudice to require a new trial, the district court wrote:

> In a civil case such as this, speculation by defense counsel, while not proper, does not threaten to impermissibly shift the burden of proof as it would in a criminal case in which the prosecution makes unfounded speculative arguments about a defendant's guilt. Here, defendants were free to argue that [Tesser] had not met her burden and to question the sufficiency of her evidence. While[ ] there was no specific evidentiary basis for suggesting that [Tesser] had "cutout" or withheld other tape-recordings, taken in context the defense was arguing that the recordings presented by

---

4. We assume for purposes of this discussion that Tesser's counsel made a timely objection to the remarks in question of the defendants' counsel, and that we are therefore not required to engage in plain-error review. *See Parker v. Sony Pictures Entm't, Inc.,* 260 F.3d 100, 107 (2d Cir.2001) ("When the appellant's claims were not preserved below, we review the district court's actions only for plain error ...."); *see also* Fed.R.Civ.P. 51(d)(2) (describing plain-error review for jury instructions); Fed.R.Evid. 103(d) (describing plain-error review for evidentiary decisions).

[Tesser] did not accurately represent the conversations between her and defendants. Similarly taking in context each of the statements to which [Tesser] points, I do not believe that they were so prejudicial as to have improperly swayed the jury. Moreover, I gave the jury very specific instructions to preclude any impermissible speculation. The jury was instructed that, "[r]easonable inferences are conclusions prompted by reason and common sense. Not all logically possible conclusions are reasonable inferences. Whether a particular inference is reasonable is exclusively for you to determine. In deciding this case, you may consider only the exhibits which have been admitted in evidence and the testimony of the witnesses as you have heard it in this courtroom." The jury was further cautioned, that "[t]he questions, arguments, remarks and summations of the attorneys are not evidence ...." ([Trial] Tr.[, July 25, 2001, at] 1346–48.)

I find that any potential prejudice resulting from statements by defense counsel which may have verged on speculation was adequately cured by the instructions to the jury, and in any case, in light of all the other evidence, such statements could not be considered so substantially prejudicial as to "in some material respect" have "swayed" the factfinder's judgment. *Perry,* 115 F.3d at 150.

*Tesser,* 190 F.Supp.2d at 443.

■ We have no reason to disagree with the district court's assessment. Indeed, we note that the district court responded to the possibility that prejudice might arise from defendants' counsel's remarks by asking Tesser's counsel to propose an appropriate remedy for the situation. The court then did precisely what Tesser's counsel requested, permitting counsel (assuming such permission was necessary) to tell the jury during summation that the defendants could have called the two doctors as witnesses if they wished to but did not do so.

In light of the relative lack of severity of the apparent misconduct, the district court's curative instructions, and the court's willingness to adopt the remedial measures suggested by Tesser, we conclude that the court did not abuse its discretion by determining that the defendants' lawyer's statements did not "unfairly influence[ ] the jury's deliberations and verdict," *Greenway* 143 F.3d at 51, and that a new trial was therefore not warranted on that basis.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court and the order of the district court denying a new trial.