14-3872-cr
*United States v. Hill*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of August, two thousand sixteen.

Present:
> DENNIS JACOBS
> DEBRA ANN LIVINGSTON,
> CHRISTOPHER F. DRONEY,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                            14-3872-cr

ELVIN HILL, A/K/A ELTON,

> *Defendant-Appellant*.

---

| | |
|---|---|
| For Appellee: | DANIEL S. SILVER, Amy Busa, Seth D. DuCharme, Assistant United States Attorneys, *for* Robert L. Capers, United States Attorney for the Eastern District of New York. |
| For Defendant-Appellant: | YUANCHUNG LEE, Federal Defenders of New York, New York, N.Y. |

**UPON DUE CONSIDERATION it is hereby ORDERED, ADJUDGED, AND DECREED** that the judgment of conviction is **AFFIRMED**.

Defendant-Appellant Elvin Hill appeals from his judgment of conviction in the United States District Court for the Eastern District of New York (Matsumoto, *J.*), entered on October 3, 2014. This appeal stems from the murder of Fredy Cuenca on June 29, 1997. Hill was convicted pursuant to 18 U.S.C. § 924(j)(1) for murder in the course of a crime of violence under 18 U.S.C. § 924(c), in this case, Hobbs Act robbery, 18 U.S.C. § 1951.

Hill challenges the district court's decision to preclude an out-of-court witness statement offered for its truth. He also challenges rulings concerning alleged propensity evidence, the admissibility of his own statements during recorded prison phone calls, and testimony regarding a lineup identification of Hill as the assailant. We assume familiarity with the facts, procedural history, and the issues on appeal, which we describe only as necessary to explain our decision.[1]

## I.     Preclusion of Franklyn Abreu's Statement

Hill challenges the district court's decision to preclude a statement by Franklyn Abreu, a ten- or eleven-year-old child who witnessed the crime.[2] On July 1, 1997, two days after the murder, Abreu was interviewed by law enforcement. A report prepared two days after the interview represents that Abreu told law enforcement officials that the robber sitting directly behind the cab driver pointed a gun at the driver's head; after hearing a shot, Abreu saw the same man exiting the vehicle from the rear driver's side and carrying a gun.[3] When interviewed by

---

[1] In a concurrently published opinion, we consider one of Hill's claims on appeal – whether Hobbs Act robbery qualifies as a "crime of violence" under 18 U.S.C. § 924(c)(3) – and we conclude that it does.

[2] The record inconsistently refers to Abreu as ten or eleven years old.

[3] The report states:

> This witness, the 11 year old son of Tanya Givens, is outside his home on his bicycle when he sees a male black with a dew rag [sic] on his head point a gun at cab driver who

2

the police again in March 2012, Abreu stated that he could remember little about the incident. He ultimately did not testify at trial.[4] Hill understood Abreu's statement to be relevant because Rhan Powell, the Government's cooperating witness, testified that the person who sat in the rear passenger's side (Hill) shot Cuenca, and the person who sat in the rear driver's side (Powell) did not. Other witnesses also testified that of the two men who exited the vehicle, only one carried a gun, and it was the person who exited from the rear passenger's side seat.

In two separate opinions, the district court denied Hill's motion to admit Abreu's statement, as represented in the police report, under Rule 807's residual hearsay exception.[5] The court reasoned that "[a]lthough there [was] no indication that Abreu was motivated by bias or an improper motive, the record [was] also bereft of any evidence that corroborate[d] Abreu's account of what transpired in the cab or establish[ed] that it [was] *reliable* hearsay." Special App'x 12. Instead, Abreu's account was that of a child witnessing a crime, and it was "not only uncorroborated," but also in fact "*contradicted* by the contemporaneous accounts provided by two other eyewitnesses." *Id.* With those considerations in mind, the district court concluded that Abreu's statement was not a "particularly trustworthy" statement and that Hill had failed to establish its admissibility pursuant to the residual exception. *See id.* at 11.

---

has his cab parked across the street. The witness hears a sound like a fire cracker, then sees the front driver's side window shatter. The black male with the dew rag gets out of the driver's side rear passenger seat. Another black male jumps out of the opposite side of the cab. This second black male has waves in his hair and is holding a gun. The black male with a dew rag on his head is also holding a gun and a paper bag. Both individuals run towards the school.

Joint App'x 136.

[4] Hill explains that "[d]espite their best efforts, defense lawyers and investigators were unable to find Abreu. There is no dispute that the defense made substantial good-faith efforts to find Abreu, or that he was 'unavailable' for trial." Hill Br. 20.

[5] The district court's second opinion denied Hill's motion for reconsideration on the issue.

We review a district court's evidentiary rulings for abuse of discretion. To that end, we will reverse a district court's evidentiary determination only if the court "acted arbitrarily or irrationally." *United States v. Jackson*, 335 F.3d 170, 176 (2d Cir. 2003) (quoting *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 88 (2d Cir. 1999)). The residual hearsay exception provides that "a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804" under certain conditions. Fed. R. Evid. 807(a). Those conditions arise when "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice." *Id.* A hearsay statement admitted under the residual exception, then, must satisfy *all* of these requirements, and we have explained that it must be "particularly trustworthy." *United States v. Morgan*, 385 F.3d 196, 208 (2d Cir. 2004) (quoting *United States v. Bryce*, 208 F.3d 346, 350-51 (2d Cir. 1999)).

The district court did not abuse its discretion in precluding Abreu's statement under the residual hearsay rule because, *inter alia*, the statement did not meet the trustworthiness requirement. The statement is recorded in a report prepared by law enforcement as an after-the-fact summary of Abreu's interview, and the exact circumstances by which the report was prepared are unclear. The statement itself, made late at night and two days after the crime, is a child's recollection of a traumatic event. In considering whether hearsay evidence is admissible under Rule 807, we have explained that district courts "should view the evidence in context." *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 236 (2d Cir. 1999) (Sotomayor, J.); *see also United States v. Bortnovsky*, 879 F.2d 30, 35 (2d Cir. 1989). We discern no abuse of

4

discretion in the district court's evaluation of that context here, nor in its conclusion that Abreu's statement was not sufficiently trustworthy to be admitted pursuant to the residual exception. Hill argues that the district court's preclusion of Abreu's statement violated his due process right to present a defense. Other evidence in the record, however, supported Hill's theory that Powell was the shooter. The district court did not exceed its discretion in concluding that Abreu's statement was not admissible pursuant to the residual exception.

## II.    Other Rulings

*Alleged propensity evidence.* Hill also argues that three witnesses each made statements at trial suggesting his propensity for violence and that their statements were prejudicial. The challenged statements include: (1) testimony by one witness that he and others used "gun man" as Hill's nickname, Joint App'x 668; (2) testimony by another witness that he felt "jittery" when meeting Hill, *id.* at 766-67, and that Hill gave him "the creeps," *id.* at 770; and (3) testimony by a third witness—Powell—that on the day of the murder, "[w]e talked about, you know, other individuals in the neighborhood. I believe he had an altercation—," *id.* at 285-86. Propensity evidence is not admissible to prove that on a particular occasion a defendant acted in accordance with a character trait. Fed. R. Evid. 404(a). But none of these statements rise to the level of improper propensity evidence. As to the potential for prejudice of the brief comments about being "jittery" around Hill, getting "the creeps" about Hill, and Hill possibly having an altercation on the day of the crime, we conclude that, even if the statements *did* constitute improper propensity evidence, Hill has fallen far short of establishing prejudice from these fleeting remarks sufficient to warrant a reversal.

As to the testimony that Hill was known by the nickname "gun man," we have noted that if a "nickname [is] strongly 'suggestive of a criminal disposition,' and a propensity to commit

5

particularly heinous crimes, including the very offenses charged in the indictment," then such a nickname might violate Rule 404(a). *United States v. Farmer*, 583 F.3d 131, 146 (2d Cir. 2009) (quoting *United States v. Dean*, 59 F.3d 1479, 1492 (5th Cir. 1995)). But we have also explained that the "main problem" with the use of a potentially prejudicial nickname arises from "prosecutors' frequently repeated, gratuitous invocation of [the] nickname in . . . address[ing] . . . the jury, uttered in a context that, in effect, invite[s] the jurors to infer that the defendant . . . earned his nickname among his . . . colleagues as a result of his proclivity to commit" the charged crime. *Id.* at 146-47. Even then, the "misuse and overuse of [a] nickname" does not "lead us to vacate a conviction unless the defendant suffered 'substantial prejudice, by so infecting the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 147 (quoting *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999)).

The concerns we articulated in *Farmer* are not present in this case. Here, the Government did not solicit or invoke the challenged nickname at all, much less use it gratuitously or repeatedly. Rather, a witness uttered Hill's nickname once. Further, the district court immediately sought to mitigate any potential prejudice. Ruling on Hill's motion for a mistrial on this ground, the district court denied the motion, but struck the statement from the record and directed the Government to instruct the witness to refrain from using the nickname. It also agreed to defense counsel's request that the Government lead the witness so as to avoid the nickname's use. The court also instructed the jury: "The jury should disregard [the statement], put it out of your mind." Joint App'x 672; *see Farmer*, 583 F.3d at 147; *cf. Kogut v. Cty. of Nassau*, 789 F.3d 36, 48 (2d Cir. 2015) ("[I]t is 'normal[ to] presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's

6

instructions.'" (second alteration in original) (quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987))). Based on the record here, we conclude that the district court took adequate measures to mitigate any concern that the single reference to Hill's nickname "gun man" might have been prejudicial.

*Statements in recorded prison phone calls.* Next, Hill contends that the district court erred in granting the Government's motion: (1) to introduce portions of two of Hill's recorded phone calls from prison; and (2) to preclude the admission of other portions of those calls that contained Hill's assertions of innocence. Specifically, the district court permitted the Government to play portions of two calls in which Hill urged an associate to locate Powell and expressed hope that Powell would "stay free." Joint App'x 115, 118-28, 497-98. The district court precluded the admission of Hill's remark: "I'm innocent." *Id.* at 91, 120. In advancing his argument, Hill relies on the rule of completeness, which provides that "even though a statement may be hearsay, an 'omitted portion of [the] statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.'" *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) (alteration in original) (quoting *United States v. Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987)); *see* Fed. R. Evid. 106. We review a district court's application of the rule of completeness for abuse of discretion. *United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999).

Here, the district court did not abuse its discretion in admitting the portion of the call pertaining to Powell but excluding the statement proclaiming innocence. The rule of completeness does not require a district court to admit "portions of a statement that are neither explanatory of nor relevant to the admitted passages." *Id.* The remark "I am innocent" does

7

not explain Hill's statement about locating Powell. Nor does it contextualize the statement about Powell. We conclude that the district court was not obligated to admit it, and we cannot identify any abuse of discretion in the district court's ruling.

*Lineup.* Hill argues, finally, that the district court erred in admitting testimony by a detective that established that a witness had identified Hill in a lineup two months after the murder. Hill contends that the lineup was improperly suggestive. The district court held a hearing on this claim and determined, in a memorandum and order, that the record did not support Hill's claim of suggestiveness. We review a district court's decision to admit identification evidence for clear error. *United States v. Salameh*, 152 F.3d 88, 125 (2d Cir. 1998) (per curiam). The question is whether the identification procedure was "so unnecessarily suggestive and conducive to irreparable mistaken identification that [Hill] was denied due process of law." *United States v. Jakobetz*, 955 F.2d 786, 803 (2d Cir. 1992) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)). An improperly "suggestive" lineup is one in which the accused "so stood out from all of the other[s] . . . as to 'suggest to an identifying witness that [that person] was more likely to be the culprit.'" *United States v. Wong*, 40 F.3d 1347, 1359-60 (2d Cir. 1994) (alterations in original) (quoting *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986)).

In this case, the district court did not err in finding that the procedures were not unnecessarily suggestive: all of the participants were within five years of Hill's age, only a few inches shorter or taller, and all had body weights within the same fifty-pound range. In evaluating the facial likeness of the lineup participants, the district court did not clearly err in concluding upon a "review of the photographs and the description of the lineup subjects" that there were "no significant disparities in appearance between . . . Hill and the other subjects."

Special App'x 92.   Hill did not stand out from the other lineup participants such that the witness would be more likely to identify him as the culprit.   We conclude, then, that the district court did not clearly err in determining that Hill's lineup was not improperly suggestive.

## III.     Conclusion

We have considered Hill's remaining arguments and find them to be without merit. Accordingly, for the reasons stated herein and in the opinion issued concurrently with this summary order, we **AFFIRM** the judgment of conviction.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9