16-1341-cr
United States v. Newkirk

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of March, two thousand seventeen.

PRESENT:  REENA RAGGI,
          DENNY CHIN,
          SUSAN L. CARNEY,
                *Circuit Judges*.
------------------------------------------------------------------------
UNITED STATES OF AMERICA,

                                        *Appellee*,


        v.                                              No. 16-1341-cr

HARVEY NEWKIRK,
                        *Defendant-Appellant*,

CALVIN R. DARDEN, JR.,
                                *Defendant*.
------------------------------------------------------------------------
APPEARING FOR APPELLEE:       SARAH E. PAUL (Andrew C. Adams, Micah W.J. Smith, Assistant United States Attorneys, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.


APPEARING FOR APPELLANT:      BETH M. FARBER (Andrew Mark St. Laurent, *on the brief*), Harris, St. Laurent & Chaudhry LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on April 28, 2016, and order of restitution entered on May 16, 2016,[1] are AFFIRMED.

Defendant Harvey Newkirk was convicted after a jury trial of wire fraud, *see* 18 U.S.C. §§ 1343 and 2; sentenced to six months' imprisonment and three years of supervised release; and ordered to pay $3.1 million in restitution. Newkirk has served his prison term, but here challenges (1) the exclusion of defense expert testimony at trial, and (2) the giving of a conscious avoidance charge on the knowledge element of the fraud. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Exclusion of Defense Expert

Newkirk argues that the district court erred in precluding expert witness testimony on the role and duties of a transactional lawyer and the financial terms relevant to the defendants' attempted acquisition of Maxim magazine. Specifically, Newkirk contends that his expert should have been permitted to explain to the jury that counterparties were responsible for verifying the accuracy of proffered financial statements, the encumbrance of collateral, or status of certain restricted stock, thereby negating any inference that Newkirk's misrepresentations were material or that he consciously avoided knowledge of

---

[1] Newkirk does not independently challenge the restitutionary component of his sentence.

2

their falsity. We "apply abuse-of-discretion review" to evidentiary rulings, "including those as to the admissibility of expert testimony," over which the district court exercises "broad discretion." *Kogut v. Cty. of Nassau*, 789 F.3d 36, 47 (2d Cir. 2015) (internal quotation marks omitted). We identify no such abuse here.

At the outset, we note that Newkirk's defense in the district court was not that his misrepresentations were immaterial. Rather, he maintained that he was unwittingly manipulated by Calvin Ramarro Darden, Jr. ("Junior") and, therefore, was not a knowing or intentional participant in the charged fraud. *See* Trial Tr. 2096 ("[Defense Counsel:] [T]he only issue in this case is what did Harvey intend? What did he believe? Did he knowingly and intentionally join in Junior's fraud?"). Thus, the case is distinguishable from *United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015), on which Newkirk relies. *See id.* at 181–82 (identifying abuse of discretion in district court's exclusion of residential mortgage-backed securities expert on minimal importance assigned to price representations by securities traders where materiality of such representations was "central issue" in case). In any event, Newkirk fails to show that, on the facts of this case—which involved misrepresentations about the very identity of the person he was representing—the district court was compelled to admit expert testimony regarding customary industry practices in the absence of such misrepresentations. The fact that attorneys do not generally check every fact communicated by a client before conveying the fact to third parties has little if any bearing on attorney obligations not to convey information they actually know, or consciously avoid knowing, is false—the only two theories on which the jury was instructed that it could convict. Much less did such

3

expert testimony speak to communications conveyed with intent to defraud, a further requirement for conviction. *See United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016).

In these circumstances, the district court acted well within its discretion in concluding that other witnesses with financial backgrounds were competent to explain the transactions and related terminology presented by the case. *See, e.g.*, *United States v. Nouri*, 711 F.3d 129, 145 (2d Cir. 2013) (deeming district court "well within its discretion" to preclude testimony on customary commissions by brokerage firms where cumulative of other evidence at trial); *United States v. Collins*, 581 F. App'x 59, 60 (2d Cir. 2014) (summary order) (same, where court excluded testimony by two lawyers on materiality of corporate agreement, and "the work of transactional lawyers" generally, where "fact witnesses proved sufficient" to explain defense to jury); *see also United States v. Long*, 917 F.2d 691, 702 (2d Cir. 1990) (deeming expert testimony about structure and jargon of organized crime families unnecessary because "[w]e do not believe that a New York jury needs expert testimony to understand . . . kickback schemes"). Indeed, Newkirk voiced no objection to such testimony when it was presented by lay witnesses.

Accordingly, Newkirk's evidentiary challenge to the exclusion of expert testimony fails on the merits.

2.      Conscious Avoidance Charge

Newkirk argues that there was an insufficient factual basis for the conscious avoidance charge given because the government's proof focused on a theory of direct

4

knowledge.  *See United States v. Lange*, 834 F.3d 58, 76 (2d Cir. 2016) (explaining that charge requires sufficient evidence for jury to conclude that defendant was "aware of a high probability of the fact in dispute and consciously avoided confirming that fact" (internal quotation marks omitted)).  He does not challenge either the district court's instructions as to his direct knowledge of the charged fraud or the sufficiency of the evidence to prove such knowledge.  Nor does he challenge the substance of the district court's conscious avoidance instruction.  On *de novo* review, *see United States v. Cuti*, 720 F.3d 453, 463 (2d Cir. 2013), we conclude that Newkirk's sufficiency challenge to the conscious avoidance charge is defeated by our precedent, *see United States v. Hopkins*, 53 F.3d 533, 542 (2d Cir. 1995) (holding conscious avoidance charge "not inappropriate merely because the government has primarily attempted to prove that the defendant had actual knowledge"); *accord United States v. Ferguson*, 676 F.3d 260, 278 (2d Cir. 2011); *see also United States v. Kozeny*, 667 F.3d 122, 133–34 (2d Cir. 2011) ("[T]he same evidence that will raise an inference that the defendant had actual knowledge of the illegal conduct ordinarily will also raise the inference that the defendant was subjectively aware of a high probability of the existence of illegal conduct." (internal quotation marks omitted)).

Here, Newkirk concedes that "the conscious avoidance charge would have been justified" by facts such as (1) the release of $5 million from an investor's escrow account as authorized by a fraudulently generated e-mail from his confederate, Junior; and (2) the fact that two different monthly account statements distributed to investors, which purportedly represented the stock holdings of Calvin Darden Sr. ("Senior"), were implausibly identical. Appellant's Br. 37.  Newkirk argues only that this basis for the instruction was vitiated by

5

his "good faith" in disclosing the information to his law firm, which authorized him to continue working on the transaction and reported the information to the authorities.

We are not persuaded. First, Newkirk provides no support for the proposition that a conscious avoidance instruction becomes inappropriate simply because the defendant has disclosed information regarding the fraud to someone *other* than the victims. To the extent disclosure of fraud may be a defense to criminal liability, it is so only as to future conspiratorial acts—not completed substantive crimes—and requires the defendant to cease his participation and so notify the government or his confederates. *See, e.g.*, *United States v. James*, 712 F.3d 79, 106 (2d Cir. 2013). That is not this case. Thus, even if Newkirk's good faith argument provided some basis for the jury to question his culpable *mens rea*, *see United States v. Dupre*, 462 F.3d 131, 136, 139 (2d Cir. 2006), it did not preclude the district court from instructing the jury that guilty knowledge of a fraud scheme could be inferred from facts that "support a finding of conscious avoidance," Appellant's Br. 37.

Second, the two cited facts were hardly the only record support for the high probability prerequisite for a conscious avoidance charge. For example, even before the fraudulent release of funds, a Merrill Lynch broker had forwarded to Newkirk an investor e-mail complaining of the financial disclosures, "I have a B of A statement for September 2013 and one for October 2013 and they are identical!!!" and asking "[w]hat is going on?" Gov't Add. 1. Newkirk acknowledged having twice received this e-mail, but claimed that he did not open it because the subject line—"Very Strange"—did not catch his attention. Further, the jury heard testimony that Senior had not agreed to participate financially in the

6

corporate transaction at issue, and so instructed Newkirk. The government presented evidence that Newkirk nonetheless (1) conducted himself as if he were representing Senior during settlement negotiations over a loan, a matter he claimed was being handled by—but which he initially avoided disclosing to—his law firm; and (2) continued to advise potential lenders that Senior was willing personally to guarantee millions of dollars in collateral. Finally, the jury heard a recording of Newkirk representing that approximately $12 million was available for the transaction through a firm escrow account, more than twice the amount that was being held in trust by the firm. On this record, the district court did not err in charging conscious avoidance.

Accordingly, Newkirk's charging challenge fails on the merits.

3.     Conclusion

We have considered Newkirk's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

7