**Amilio AMATUCCI, Plaintiff-Appellee,**

v.

**DELAWARE AND HUDSON RAILWAY COMPANY, Defendant-Appellant.**

No. 34, Docket 84–7178.

United States Court of Appeals, Second Circuit.

Argued Aug. 31, 1984.

Decided Sept. 28, 1984.

Joseph A. Katarincic, Pittsburgh, Pa. (Thomas W. Brown, Robert A. Auerbach, Carolyn B. George, Lyons, Pentak, Brown & Tobin, Albany, N.Y., Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., of counsel), for defendant-appellant.

John Scarzafava, Oneonta, N.Y., for plaintiff-appellee.

Before KAUFMAN, MESKILL and PIERCE, Circuit Judges.

PIERCE, Circuit Judge.

The Delaware and Hudson Railway Company ("D & H" or "railroad") appeals from a judgment entered February 6, 1984, on a verdict for the plaintiff following a jury trial in the District Court for the Northern District of New York, James T. Foley, *Judge.* The jury awarded appellee Amatucci $137,500 under the provisions of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60. Without reaching the merits of Amatucci's FELA claim, we find that the district court erred by admitting into evidence testimony that was prejudicial to the railroad and affected

its substantial rights. *See* Fed.R.Evid. 103(a). We reverse the judgment of the district court and remand the cause for a new trial.

## I. BACKGROUND

Amatucci sued his employer, the railroad, claiming it negligently failed to provide him with a safe place to work and continued to assign him to a job that was adversely affecting his health. He maintains that this negligence caused him to sustain a heart condition that ultimately rendered him unable to work for the D & H.

Amatucci's employment with the D & H began in 1964. In 1971, he qualified as an engineer for the railroad, but worked chiefly as a fireman. After 1976, Amatucci alleges, he was given work only as an "extra-board engineer." As such, he was on call 24 hours a day, seven days a week. There was testimony at trial that the conditions of employment were highly stressful; that engineers were required to operate engines that lacked functioning safety mechanisms over badly deteriorated track in mountainous terrain while carrying a variety of cargo, including toxic, explosive, and radioactive materials. The railroad allegedly was aware of these conditions but did not rectify them. Further, evidence was presented to show that the railroad sometimes required extra-board engineers to operate engines for 12 hours, sleep for four to six hours, and again operate engines for 12 hours. There was testimony that, despite such conditions, the engineers considered themselves responsible for the safety of the train crew and for the well-being of the inhabitants of the towns and villages through which the train passed.

In March of 1978, Amatucci developed a stomach condition, for which the railroad doctor prescribed antacids and rest. In July of that year, he suffered a breakdown that caused him to cry uncontrollably, whereupon the railroad's doctor instructed the D & H trainmaster to allow Amatucci to refuse extra-board assignments when he was too fatigued to work. After a few months, however, Amatucci was notified that he would no longer be permitted to "mark off" because of fatigue. When Amatucci refused a work assignment because of fatigue, he was suspended without pay. He thereafter returned to work, on essentially the same schedule he had before his breakdown.

In April 1980, Amatucci experienced severe chest pain, later diagnosed as angina pectoris. The railroad thereupon relieved him of extra-board engineer duties and reassigned him to yard duty. The railroad's doctor testified that job-related stress was the basis for this decision. After October 26, 1982, apparently there was no longer any work available for which Amatucci was qualified. Amatucci brought this action against the D & H on December 1, 1982.

At trial, Amatucci's counsel elicited testimony from a witness, Fink, that he had suffered a heart attack while operating an engine as an extra-board engineer for the D & H. There was no objection to this testimony. Immediately thereafter, Amatucci's counsel inquired whether Fink was familiar with "any other engineers that had a heart attack while driving a locomotive engine." Counsel for the railroad objected to this as irrelevant. Although the court suggested that the objection would be sustained, the district judge, for reasons that are not entirely clear from the record, proceeded to pursue this line of questioning himself, all within the hearing of the jury. This dialogue was as follows:

Q Mr. Fink, you had your heart attack while you were driving a locomotive engine, is that correct?

A That is correct.

Q And while you were on the Delaware and Hudson Railroad did you become familiar with any other engineers that had a heart attack while they were driving a locomotive engine?

MR. BROWN [counsel for D & H]: I object to it, your Honor, as being irrelevant.

THE COURT: I am inclined to sustain it. Where did you have your heart attack? Did it happen on the engine?

THE WITNESS: On the engine.

THE COURT: All right. I think that it is irrelevant whether other engineers had them. We will get into a lot of difficulties.

MR. SCARZAFAVA [counsel for Amatucci]: I will pass that one, and I will pass the witness, sir.

THE COURT: Do you know personally all of these engineers that might have had heart attacks?

THE WITNESS: Yes, I did, sir.

THE COURT: How many were there?

MR. BROWN: Judge, I am going to object to the Court's inquiry.

THE COURT: I am going to allow it. I never sustain an objection to my own questions.

MR. BROWN: I except to that, Judge.

THE COURT: All right, how many?

THE WITNESS: I am counting.

THE COURT: Personally, that you know.

THE WITNESS: About seven or eight, somewhere along that line.

THE COURT: All right.

MR. SCARZAFAVA: Thank you, Judge.

THE COURT: Were they all engineers?

THE WITNESS: Yes, they were.

THE COURT: All right, Mr. Brown.

MR. BROWN: Yes, your Honor.

MR. SCARZAFAVA: I am finished.

MR. BROWN: Thank you. At this time I move to strike the testimony of Mr. Fink upon the grounds that it is incompetent, irrelevant and immaterial, and not connected, and it is prejudicial.

MR. SCARZAFAVA: May I respond?

THE COURT: Let me start by saying, what part do you want to strike?

MR. BROWN: All of it.

THE COURT: The motion is denied.

MR. BROWN: Exception.

Mr. Scarzafava, Amatucci's counsel, read the dialogue back to the jury during his summation; counsel for the D & H again objected and was overruled. The jury returned a verdict for appellee Amatucci.

## II. DISCUSSION

■ We note at the outset that the testimony elicited by the trial judge was, as he seemed initially to recognize, of no relevance to the matter before him. *See* Fed. R.Evid. 401. The circumstances surrounding the other alleged heart attacks, including the personal and family medical histories of the victims, remain unknown and therefore the testimony had no probative value on the questions of the railroad's negligence, notice, or causation. *See id.* Under Fed.R.Evid. 402, therefore, the testimony should not have been admitted.

■ We are not persuaded by Amatucci's arguments that the railroad failed to preserve its objection to this testimony for appeal. When Amatucci's counsel initiated the questioning relating to the "seven or eight" other heart attack victims, counsel for the D & H promptly objected to the testimony "as being irrelevant." Immediately thereafter, when Judge Foley began to pursue the same line of questioning, the D & H again objected, this time without citing a specific ground. Finally, at the close of Judge Foley's questioning, the D & H again sought to strike the testimony, stating it was "incompetent, irrelevant and immaterial, and not connected, and it is prejudicial." Clearly Judge Foley was on notice as to the objection, and the nature thereof. Indeed, he initially agreed that the testimony was irrelevant. We therefore find the objections by counsel for the D & H adequately preserved for appeal. *See United States v. Check,* 582 F.2d 668, 675–76 (2d Cir.1978); Fed.R.Evid. 103(a) (Advisory Comm. Note).

■ Moreover, the district court's error was not harmless. Whether error is harmless must be determined on the facts of each individual case. *Glasser v. United States,* 315 U.S. 60, 67, 62 S.Ct. 457, 463, 86 L.Ed. 680 (1942), *cited in United States v. Persico,* 305 F.2d 534, 537 (2d Cir.1962); *United States v. Ledesma,* 632 F.2d 670, 674 (7th Cir.1980) (quoting *International Merger & Acquisition Consultants v. Armac Enters., Inc.,* 531 F.2d 821, 823 (7th

Cir.1976)), *cert. denied,* 449 U.S. 998, 101 S.Ct. 539, 66 L.Ed.2d 296 (1980). Whether Amatucci's heart condition was caused by the alleged negligence of the railroad was the crucial issue in this case. Conflicting expert testimony was presented on the question of causation. The challenged testimony was elicited by the trial judge and not merely by counsel, and the jury accordingly may have attached more weight to it. The testimony was to the effect that "seven or eight" other engineers had suffered heart attacks in the line of duty. Because of the strong possibility that this testimony, highly suggestive of a causal link between employment as a D & H extra-board engineer and Amatucci's heart condition, influenced the jury, we cannot conclude that the testimony did not "affect the substantial rights of the [railroad]." *See* 28 U.S.C. § 2111; Fed.R.Civ.P. 61; Fed.R. Evid. 103(a). We "cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the [verdict] was not substantially swayed by the error." *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 557 (1946).

Since we reverse the judgment of the district court on the ground of improper admission of prejudicial evidence, we need not address appellant's contentions with respect to the merits of Amatucci's FELA claim.[1]

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed and the cause remanded for a new trial.

---

1. While we express no opinion as to the validity *vel non* of appellant's claim, upon retrial it would be helpful, in the event there is a need for future review, to have a fuller record concerning the nature of Amatucci's heart condition, and additional evidence as to its origin and development.