18-1858
*Colon, et al. v. Metro-North Commuter Railroad Company, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of June, two thousand nineteen.

Present:
>    DEBRA ANN LIVINGSTON,
>    GERARD E. LYNCH,
>    RICHARD J. SULLIVAN,
>        *Circuit Judges.*

---

MILTON OMAR COLON, ARLENE DAVIS,

    *Plaintiffs-Appellants*,

    v.                                                              18-1858

METRO-NORTH COMMUTER RAILROAD COMPANY,
METROPOLITAN TRANSPORTATION AUTHORITY,

    *Defendants-Appellees*.*

---

For Plaintiffs-Appellants:        JOHN V. SISKOPOULOS, Siskopoulos Law Firm, LLP,
                                  New York, NY.

For Defendants-Appellees:         ROBERT O. HICKEY (Beck S. Fineman, *on the brief*),
                                  Ryan Ryan Deluca LLP, Stamford, CT.

---

* The Clerk of Court is respectfully directed to amend the caption as set forth above.

Appeal from the judgments of the United States District Court for the District of Connecticut (Meyer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Plaintiffs-Appellants Milton Omar Colon and Arlene Davis (collectively, "Plaintiffs") appeal from the judgment entered on October 19, 2017 by the United States District Court for the District of Connecticut (Meyer, *J.*) dismissing Plaintiffs' complaint following a jury verdict in favor of Defendants-Appellees Metro-North Commuter Railroad Company and the Metropolitan Transportation Authority (collectively, "Defendants"). Plaintiffs also appeal the May 22, 2018 decision and order of the district court denying their motion for a new trial under Federal Rule of Civil Procedure 59 and the district court's final judgment entered on May 24, 2018. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\* \* \*

On March 17, 2011, Plaintiff-Appellant Milton Omar Colon ("Colon") decided to climb one of the catenary towers that line the Metro-North railway linking the cities of New Haven and New York.[1] During his ascent, Colon was electrocuted by at least one of the high-voltage electric lines carried by the tower. He endured severe injuries, including sustaining burns all over his body and the amputation of both of his legs above his knees. Plaintiffs filed a federal diversity lawsuit for negligence against Defendants, and following a two-week trial, the jury found against the Plaintiffs. In addition to finding that Plaintiffs had failed to demonstrate

---

[1] Colon claims that he decided to climb the tower in order to get a better view of a herd of deer that he noticed while wandering in the wetlands near the railroad tracks.

Defendants' negligence, the jury also answered special interrogatories regarding each of the five specific elements of Plaintiffs' negligence claim, concluding that Plaintiffs had failed to carry their burden of establishing three of those five elements.

## A. The Jury Instruction

Plaintiffs first argue that the district court issued an erroneous instruction to the jury as to one of the elements of Plaintiffs' negligence claim. We review challenges to jury instructions *de novo*. *See LNC Invs., Inc. v. First Fidelity Bank, N.A. N.J.*, 173 F.3d 454, 460 (2d Cir. 1999). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994). "An erroneous instruction requires a new trial unless the error is harmless," *i.e.*, unless "it is clear that [the error] did not influence the jury's verdict." *Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 390 (2d Cir. 2006) (internal quotation marks omitted).

"[I]t is the general rule subject to a number of qualifications . . . that the possessor [of land] is not liable for injury to trespassers caused by his failure to exercise reasonable care to put his land in safe condition for them." 2 W. Page Keeton, et al. *Prosser and Keeton on The Law of Torts* § 58 p. 393 (5th ed. 1984). One such qualification is the constant or "frequent trespass" rule, pursuant to which landowners are under a duty of care to reasonably anticipated trespassers. *See id.* at 394. As Connecticut (the relevant jurisdiction here) has formulated the rule: a "possessor of land who *knows, or from facts within his knowledge should know*, that trespassers constantly intrude upon *a limited area*, is subject to liability for bodily harm caused to them by an artificial condition on the land." *Maffucci v. Royal Park Ltd. P'ship*, 707 A.2d 15, 20 (Conn. 1998) (quoting Restatement (Second), Torts § 335 p. 188 (1965)). In other words, under Connecticut law, a property owner must warn a trespasser (such as Colon) of serious hidden

3

dangers on a property, if the property owner was aware of prior constant trespasses on the limited area of the property where the hidden danger exists. *See id.* at 20–22. The district court instructed the jury that it should consider whether Defendants could be liable to Plaintiffs under this so-called "constant intrusion" theory of negligence liability. The district court further instructed the jury that as to the third element of Plaintiffs' negligence claim:

> Mr. Colon must prove by a preponderance of the evidence . . . that Metro-North knew, or should have known on the basis of facts within its knowledge, that other trespassers had previously constantly intruded upon the limited area of the property that was in dangerous proximity to where the hidden danger existed that injured Mr. Colon (*i.e.,* within dangerous proximity to any static electricity from high-voltage wires).

Appendix ("A.") 1394.

Plaintiffs argue that the district court erred in informing the jury that in order to be liable under a constant intrusion theory, Defendants must have known of prior constant intrusion in dangerous proximity to the high-voltage wires on the catenary tower, as distinct from knowing merely that there had been constant intrusions around *the base* of the tower structure, about forty feet below where Colon was injured.

We need not answer this question regarding Connecticut tort law, however, because even assuming that the district court erred in outlining the precise contours of the third element of Plaintiffs' negligence claim, any error was harmless. The instruction concerned only one of the five elements of Plaintiffs' claim, and the jury found that Plaintiffs failed to establish two *additional* elements necessary to succeed on this claim. In particular, the jury found that Colon's injury was not caused by a "Serious Hidden Danger," and that the injury was not caused by Metro-North's "Failure to Reasonably Warn." A. 1383, 1393. The jury's finding as to the one element at issue on this appeal had no bearing on its findings as to those other elements. Thus,

4

regardless of whether the district court's jury instructions were erroneous, a new trial is not required in this case because Plaintiffs cannot show that "considering the instruction[s] as a whole, the cited errors were not harmless, but in fact prejudiced [them]." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 235 (2d Cir. 2006); *see also Ribeiro v. United Fruit Co.*, 284 F.2d 317, 321 (2d Cir. 1960) (holding that where three interrogatories were not mutually dependent, and the third interrogatory (decided against the appellant) presented the critical issue, errors regarding submission of the other two interrogatories did not prejudice the appellant).[2]

## B. The Alleged Spoliation and Discovery Misconduct

Next, we reject Plaintiffs' contention that the district court committed reversible error in denying their motion for discovery sanctions following Defendants' alleged spoliation of relevant evidence. A party seeking an adverse inference instruction or other sanctions based on the spoliation of evidence must establish: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that [the evidence is] destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (internal quotation marks omitted). We review a district court's decision on a motion for discovery sanctions for abuse of discretion. *See Selletti v. Carey*, 173 F.3d 104, 110 (2d Cir. 1999).

Plaintiffs argue that Defendants committed spoliation in laying crushed stone near and

---

[2] For similar reasons, we reject Plaintiffs' assertion that the district court erred in failing to charge the jury on the Restatement (Second) of Torts § 337. First, Connecticut has yet to adopt this provision. Second, any failure to instruct was harmless given the jury's answers to the interrogatories.

around the relevant catenary tower (and thereby altering the accident site) during railway maintenance almost three years after the accident. We have recognized that the "failure to adopt good preservation practices" is only "one factor in the determination of whether discovery sanctions should issue." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012) (internal quotation marks and alterations omitted). Here, the district court concluded that in light of the passage of time between the accident and the road maintenance and Defendants' duty to maintain a safe railroad, Defendants "[a]t most . . . acted negligently with respect to their duty to preserve evidence." Special Appendix 20. Even "a finding of gross negligence merely permits, rather than requires, a district court to give an adverse inference instruction." *Chin*, 685 F.3d at 162. The district court therefore did not abuse its discretion in concluding that an adverse inference instruction was inappropriate under the circumstances presented here, particularly given Plaintiffs' access to ample evidence of the accident site prior to the alleged act of spoliation.

### C. The FRA Casualty Reports

Next, we reject Plaintiffs' contention that the district court erred in excluding Federal Railroad Administration ("FRA") casualty reports from the evidence presented to the jury at trial. The district court initially granted Plaintiffs' motion to allow the reports and their accompanying summaries into evidence, but subsequently granted Defendants' motion for reconsideration under Local Rule of Civil Procedure 7(c), excluding the reports and their summaries from the evidence presented at trial. We review the grant or denial of a motion for reconsideration for abuse of discretion. *Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125 (2d Cir. 2011).

In some circumstances, evidence of other accidents or injuries may be used to show the risk that a defendant's conduct created or that a defendant knew or should have known about a danger.

6

*See, e.g.*, *Fortunato v. Ford Motor Co.*, 464 F.2d 962, 968 (2d Cir. 1972) ("Competent evidence of accidents similar to [the plaintiff's] on [the accident site] would have been admissible."). Here, the district court concluded that the FRA reports did not provide evidence of accidents substantially similar to Colon's such that they would be relevant for the jury's determination of Plaintiffs' negligence claim. We agree with the district court's assessment: the FRA reports detailed disparate accidents, many of which occurred decades ago and most of which did not involve electric wires or catenary towers, let alone the specific tower at issue here. In other words, the reports were not sufficiently probative so as to demand their admission, and the district court did not abuse its discretion in concluding that it had erred in originally determining otherwise. *Cf. Amatucci v. Delaware & Hudson Ry. Co.*, 745 F.2d 180, 183 (2d Cir. 1984) (holding that in FELA action by engineer who claimed working conditions caused heart condition, it was reversible error to admit testimony that seven or eight other engineers had heart attacks, since the circumstances and medical histories in these incidents were unknown).[3]

## D. The Expert Witness Testimony

Plaintiffs also argue that the district court "neutered" their case by precluding and striking portions of the testimony offered by Dr. Elliot Stern, Plaintiffs' expert witness. Br. Plaintiffs-Appellants at 31. We review a district court's evidentiary rulings, including the

---

[3] Plaintiffs also take issue with the fact that Defendants filed their motion for reconsideration on the eve of the trial almost two months after the district court originally ruled on the admissibility of the FRA reports. It is not disputed that Connecticut Local Rule 7(c) prescribes a seven-day period for filing a motion for reconsideration. *See* D. Conn. L. R. 7(c)(1). "[A] failure to timely file a motion for reconsideration may constitute sufficient grounds for denying the motion; however, courts have exercised their discretion to address even untimely motions." *Palmer v. Sena*, 474 F. Supp. 2d 353, 354 (D. Conn. 2007); *see also Transaero, Inc. v. La Fuerza Aerea Boliviana*, 99 F.3d 538, 541 (2d Cir. 1996) ("[A] district court is vested with the power to revisit its decisions before the entry of final judgment and is free from the constraints of Rule 60 in so doing.").

admission of expert testimony, for abuse of discretion. *See Chin*, 685 F.3d at 160. A district court's exclusion of expert testimony is an abuse of discretion only if it is "manifestly erroneous." *Id.* at 160–61 (internal quotation marks omitted). An evidentiary error is harmless unless the appellant shows a likelihood that a substantial right was affected, "such as when a jury's judgment would be swayed in a material fashion by the error." *Id.* at 161 (internal quotation marks omitted).

First, we conclude that the district court did not abuse its discretion in precluding Dr. Stern from testifying about certain subjects that were either outside of his area of expertise or lay matters that the jury was capable of deciding without expert assistance. *See* Fed. R. Evid. 702(a) (a qualified expert may testify in the form of an opinion if: "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"). Second, we conclude that the district court did not abuse its discretion in striking a very small portion of Dr. Stern's testimony on the ground that Plaintiffs' counsel had clearly misled opposing counsel as to the substance of this portion of Dr. Stern's testimony prior to trial. *See* Fed. R. Civ. P. 37(c)(1) (stating that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless"); *see also Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 457 (2d Cir. 1975) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." (internal quotation marks omitted)). Finally, even if the district court erred, such error was harmless. A review of the entire trial record reveals that the portions of Dr. Stern's testimony that the district court either struck or precluded him from testifying about would not have swayed the jury's determination.

### E. The Allegations of Judicial Bias

Lastly, we reject Plaintiffs' assertion that the district court demonstrated evident bias during the trial, prejudicing the Plaintiffs to the extent that a new trial is warranted. "In reviewing a challenge to a trial judge's conduct, we determine not whether the trial judge's conduct left something to be desired, but . . . whether the judge's behavior was so prejudicial that it denied a party a fair, as opposed to a perfect, trial." *Shah v. Pan Am. World Servs., Inc.*, 148 F.3d 84, 98 (2d Cir. 1998) (internal quotation marks and alterations omitted). Here, we discern no basis for criticism of the district court's conduct, much less prejudicial behavior that deprived Plaintiffs of a fair trial. The incidents that Plaintiffs highlight (such as asking Plaintiffs' counsel not to testify on behalf of a witness) are a far cry from that which this Court has found to have a sufficiently prejudicial effect such that a new trial is warranted. *See, e.g.*, *Anderson v. Great Lakes Dredge & Dock Co.*, 509 F.2d 1119, 1121–28 (2d Cir. 1974) (finding prejudice where the trial judge, *inter alia*, repeatedly expressed sympathy for the plaintiff, told a juror he was "there to be sold a bill of goods" by the defendant, and "for eight pages of the transcript took the examination out of the hands of plaintiff's counsel, questioning the plaintiff in detail and at length . . . with the aid of leading questions"). In sum, Plaintiffs have not provided evidence that the district court acted in a biased fashion, let alone that the jury would have been prejudiced by such bias.

\* \* \*

We have considered Plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9